***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Defendant-Employer is self-insured for purposes of the Act.
2. Plaintiff was employed at the average weekly wage of $438.72 per week, which would compute to a compensation benefit in the amount of $292.63 per week.
3. Defendant-Employer completed a Form 19 Employer's Report of Employee's Injury on February 20, 2003.
4. A Form 61 Denial of Workers' Compensation Claim was completed on March 3, 2003, which denied all compensability and medical benefits.
5. A Form 33 Request for Hearing was filed by Plaintiff on June 27, 2003, and a Form 33R was filed by Defendant-Employer on or about July 29, 2003.
6. The parties mediated this matter on November 12, 2003, which mediation ended in an impasse. Defendant has paid the entire mediation fee of $600.00 and would be entitled to a credit in the amount of $300.00 for Plaintiff's portion of the mediation expenses in the event that Plaintiff is awarded any benefits.
7. Plaintiff's last day of work for Defendant-Employer was on or about February 18, 2003.
8. The parties stipulate that the depositions of any treating physicians or medical providers may be taken after the hearing within a time frame to be set by the Commission.
9. The parties stipulate that the medical records of Plaintiff may be admitted into evidence without further authentication.
10. The issues for determination are:
 A. Whether Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment for Defendant-Employer?
 B. What benefits is Plaintiff entitled to under the Act?
11. The parties stipulated into evidence as Stipulated Exhibit #1, Pre-trial Agreement, as modified and initialed by the parties.
12. The parties stipulated into evidence as Stipulated Exhibit #2, medical records.
13. The parties stipulated into evidence as Stipulated Exhibit #3, job videotape.
14. The parties stipulated into evidence as Stipulated Exhibit #4, Industrial Commission forms.
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was forty-nine years of age. He was married with one teenage child and had a tenth grade education. Prior to his work with Defendant-Employer, Plaintiff had worked at warehouses processing tobacco for packing, with Burlington Mills and No Nonsense loading yarn into a processing machine, and as a car detailer with several car dealerships.
2. Plaintiff began working for Defendant-Employer in the fall of 2002 as a flock machine operator. Later, Plaintiff was moved to the back end loader position. In the back end loader position, Plaintiff was required to place rods into spools of yarn and load the spools of yarn onto a processing machine using a chain hoist. Once the spools were loaded onto the machine, Plaintiff would cut the paper off the spool, put the spool onto the rack, and sew the yarn into the machine. The machine would load the spool of yarn without the employee needing to manually lift the spool. Another employee sat on the other side of the machine where yarn was painted, and would cut off the machine or slow it down if problems were encountered. All parties conceded at the hearing before the Deputy Commissioner that it was very important to keep the yarn connected as it went through the machine and not let one spool finish without sewing it to the next spool to avoid a machine shut down.
3. On February 16, 2003, Plaintiff was employed with Defendant-Employer as a back end loader, working a third shift ending during the early morning hours. On this date, during the course and scope of his employment, Plaintiff was loading rods holding spools of yarn into the processing machine. Plaintiff testified he loaded both large and small spools of yarn that morning. Normally, Plaintiff had someone assist him when the small spools were used because the small spools needed to be loaded and sewn much faster than the larger spools. On this morning, Plaintiff worried about the machine shutting down, so he lifted the rod with the spool of yarn manually without using the chain hoist and without assistance. Upon picking up the spool of yarn, Plaintiff immediately felt a sharp pain in his back. Plaintiff hurried to lift the spool and get it sewn before the spool that was already loaded finished. Plaintiff worked the remainder of his shift.
4. Sonnie Bobbitt, supervisor for the frame machine area, testified that he had never attempted to lift a small spool of yarn without using a chain hoist, but he had seen other workers manually lift spools of yarn. He also testified that employees were supposed to use the chain hoist to lift all spools of yarn, and if Plaintiff was not using the chain hoist, then he was not performing the job correctly. Mr. Bobbitt further testified that Plaintiff did not report the injury to him that night even though Mr. Bobbitt rotated through the facility during the entire shift.
5. Plaintiff testified that he immediately reported his back pain to his co-worker, Brenda Campbell, stating to her that she should "watch out for him because he hurt his back lifting a small spool of yarn.
6. On direct examination, Ms. Campbell, who worked the foam table located on the other side of the machine approximately twenty feet away from Plaintiff, testified that they did not run small spools of yarn that week and she did not observe Plaintiff lifting spools of yarn that morning. Ms. Campbell further testified that Plaintiff did not tell her that he hurt his back, nor did she observe Plaintiff experiencing any problems in performing his job.
7. Plaintiff was scheduled to work the following two night shifts, but did not report to work due to an ice storm. Plaintiff returned to third shift on February 18, 2003, and completed his job using a chain hoist. This was the last day Plaintiff returned to work for Defendant-Employer.
8. On February 19, 2003, Plaintiff reported the February 16, 2003 lifting incident and back injury to Defendant-Employer's Human Resources Director, Elmer Wolfe, who completed an Industrial Commission Form 19 on February 20, 2003. Defendant denied this claim pursuant to Industrial Commission Form 61.
9. On February 19, 2003, Plaintiff sought treatment from Dr. Thomas Koinis at Oxford Family Physicians. He reported that he had been experiencing back pain for several weeks prior, but the pain became much worse on February 16, 2003. Dr. Koinis found Plaintiff had a full range of motion of his back in all directions and he had no signs of nerve impingement. Plaintiff's straight leg raise was negative on both sides, his belly felt normal, and his neck and general appearance was normal. Plaintiff underwent an x-ray, which revealed arthritis were different levels. Dr. Koinis opined that such arthritis was not uncommon for an individual Plaintiff's age. Dr. Koinis diagnosed Plaintiff with lower lumbar degenerative disc disease and degenerative joint disease, which he opined had existed for some time. Plaintiff did not report to Dr. Koinis that he had injured his back at work, but did report he did a lot of lifting at work. Dr. Koinis took Plaintiff out of work one week and referred him to physical therapy.
10. Plaintiff was seen at Team Care Manual and Physical Therapy Company for physical therapy on February 21, 2003. Plaintiff did not report that he injured his back at work, but the medical notes from the visit indicate that Plaintiff reported being hurt on February 16, 2003.
11. Plaintiff returned to Dr. Koinis on February 26, 2003. At this time, Plaintiff was having numbness going down to his foot on his right side made worse with bending. In addition, Plaintiff reported that physical therapy was not helping and actually made the pain worse. Dr. Koinis felt Plaintiff had back pain with radiculopathy and irritation of the nerve going into his right leg, raising concerns of disc herniation or bulging. After examination, Dr. Koinis recommended that Plaintiff undergo an MRI and referred him to Duke University Affiliated Physicians for further treatment. Dr. Koinis testified that the MRI showed disc protrusion at the L5-S1 region going to the right side that was impinging onto one nerve, and degenerative changes from L3-L4 to L5-S1. Dr. Koinis further testified that the disc at L5-S1 "had come out through the ligaments and it was impinging on the nerve." Dr. Koinis discontinued physical therapy.
12. On June 17, 2003, Plaintiff saw Dr. Anna Bettendorf of the Duke University Health System and received a cortisone injection at the L5-S1 level.
13. Plaintiff returned to Dr. Koinis on September 16, 2003. Dr. Koinis examined Plaintiff and found that he was tender on both sides of his low back, more to the right side than left, and had a positive straight leg raise on both sides. Dr. Koinis prescribed Percocet for pain. Dr. Koinis testified that Plaintiff had previously been prescribed Percocet by Plaintiff's orthopedist for the February 16, 2003 injury.
14. On October 20, 2003, Plaintiff contacted Dr. Koinis and requested another prescription for Percocet. The request was denied and Plaintiff was instructed to obtain all prescriptions through his orthopedist.
15. Prior to Plaintiff's next visit with Dr. Koinis on October 27, 2003, Plaintiff's Duke University affiliated orthopedist, Dr. Haglin, recommended repeating the MRI and going ahead with surgery. When Plaintiff returned to Dr. Koinis, he requested a second opinion regarding the need for surgery.
16. On November 4, 2003, Dr. Koinis's Physician Assistant Julia Burfeind treated Plaintiff. Plaintiff reported that his pain was so severe he could not sleep at night and he wanted another prescription for Percocet. Plaintiff had used one hundred tablets of Percocet in the preceding twenty days, which Dr. Koinis considered a fairly high amount. Plaintiff was advised that the office would not write any further prescriptions for Percocet.
17. Plaintiff returned to Dr. Koinis's associate Dr. Fruth on December 4, 2003. Plaintiff reported that he could not sleep and had continuing pain. Plaintiff also requested a referral to Dr. Ralph A. Leibelt of Triangle Orthopaedic Associates. Dr. Fruth provided Plaintiff with another prescription for Percocet. This was the first visit with Dr. Koinis's office where Plaintiff reported that his injury on February 16, 2003 was work-related.
18. Plaintiff had not returned for any additional visits with Dr. Koinis, but contacted his office on January 7, 2004, for a prescription for Percocet. This request was denied and Plaintiff was advised to obtain prescriptions for all medication through his orthopedist.
19. Defendant suggests Plaintiff's repeated requests for Percocet prescriptions were a possible indicator of Plaintiff's attempt to procure the narcotic for illegal purposes such as selling the tablets. Plaintiff testified, and the medical records support, that Plaintiff had been in pain since his injury on February 16, 2003, through the time of hearing. The Full Commission finds there exists insufficient evidence to establish Plaintiff's repeated requests for Percocet were indicative of an illegal motive.
20. At deposition, Dr. Koinis opined that the results of the February 28, 2003 MRI were consistent with the symptoms for which Plaintiff complained on February 26, 2003. Specifically, Dr. Koinis opined that "when he came in on the [26th], he really had nerve root symptoms with the pain numbness going down his right leg. And the first visit on the 19th he did not have any of those symptoms. . . . So my sense is what happened is during that time those discs were probably, you know, bulging some and then some of that actually during that intervening week began to actually protrude out and push, you know, on the nerve." Dr. Koinis testified that according to Dr. Leibelt's January 27, 2004 notes, Plaintiff would need surgery and Dr. Koinis agreed with Dr. Leibelt's opinion that Plaintiff was "functionally quite limited and — felt that — without surgical intervention, he felt it unlikely that he's going to be able to have any, you know, real improvement in his condition."
21. Based on the Plaintiff's report of his job responsibilities, Dr. Koinis opined that the complaints Plaintiff had on February 19, 2003, would be consistent with a lifting injury or aggravation; and the lifting incident Plaintiff described is consistent with the conditions he presented. Dr. Koinis testified even though Plaintiff did not inform his office that he hurt his back at work on February 16, 2003, his medical notes are consistent with February 16, 2003, being the specific date Plaintiff reported an onset of worsening pain. Dr. Koinis also opined that Plaintiff's condition had not changed and he was still unable to bend and lift things like he was doing at work with Defendant-Employer.
22. William Kennedy, investigator with Batten Investigations, Inc., testified that on October 16, 2003, he was hired to observe and document Plaintiff's activities. Mr. Kennedy stated that he obtained surveillance of Plaintiff on October 17, 2003, December 8, 2003, and January 13, 2004. On December 8, 2003, Mr. Kennedy observed Plaintiff get out of a white Honda Accord and wipe down the tires. The video footage lasted approximately one minute and showed Plaintiff squatting. There was no evidence that Plaintiff owned the vehicle.
23. Plaintiff has admitted that for a fee, he details vehicles for others, including washing and vacuuming the vehicle, cleaning the windows, and wiping the tires. Plaintiff testified that he has performed this work "off and on" since his termination in March 2003, and charges twenty-five dollars per vehicle. There is insufficient evidence from which to determine how much Plaintiff earned from car detailing or how often he did car detailing. Plaintiff did not report this income when responding to Defendant's interrogatories concerning whether he was working and earning wages. Specifically, Plaintiff responded that he had been unable to work since the date of his work injury and was unable to use his back due to restrictions and pain. Plaintiff testified at hearing, the pain relief he experienced while taking Percocet allowed him to detail the vehicles without significant pain.
24. On March 31, 2003, Defendant-Employer informed Plaintiff that he was being terminated from employment because he falsified his employment application. He checked "No" when answering a question regarding his criminal record. The question read: "Have you ever been convicted of a felony or released from prison within the past seven years?" Plaintiff understood the question to only concern the seven-year time period prior to completing the application. The record shows that Plaintiff had been convicted of a felony and served time in prison, but had not been convicted of a felony within the last seven years, and had been out of prison for more than seven years since his conviction. Plaintiff admitted he had a criminal record consisting of charges more than seven years old as of 2002, which included possession of controlled substance charges.
25. The Full Commission finds Plaintiff's understanding of the employment question regarding his criminal background to be reasonable.
26. The Full Commission finds that Plaintiff's employment was terminated for reasons unrelated to Plaintiff's workers' compensation claim. Plaintiff's termination, however, did not constitute misconduct or a constructive refusal of suitable employment.
27. The Full Commission finds Plaintiff's testimony concerning his injury and how it occurred to be credible.
28. The greater weight of the evidence establishes that Plaintiff did timely report the February 16, 2003 lifting incident and back injury to Defendant-Employer's Human Resources Director, Elmer Wolfe.
29. On February 16, 2003, Plaintiff sustained a back injury by specific traumatic incident arising out of and in the course of his employment as a result of lifting a small spool of yarn. Due to his injury, Plaintiff was incapable of working in any employment from February 19, 2003, and continuing.
30. Plaintiff's work-related injury of February 16, 2003, either caused Plaintiff's disc herniations and nerve impingements or aggravated a pre-existing condition and is compensable under the North Carolina Workers' Compensation Act.
31. Plaintiff has produced medical evidence in the form of Dr. Koinis's testimony and Dr. Leibelt's medical notes that he is physically, as a consequence of the work-related injury, incapable of work in any employment. Defendant has failed to prove there are jobs in the competitive marketplace that Plaintiff could obtain considering his age, educational and physical limitations. Moreover, Defendant has failed to prove Plaintiff's sporadic car detailing efforts demonstrate that Plaintiff is able to earn wages equal to, or greater than his pre-employment wages, or that Plaintiff has diminished wage earning capacity and is therefore partially disabled.
32. The medical treatment Plaintiff received following his injury of February 16, 2003, including, but not limited to, the assessment of Dr. Thomas Frank Koinis was causally related to the specific traumatic incident of February 16, 2003, and was reasonably required to effect a cure, provide relief or to lessen his period of disability.
33. The evidence does not establish whether Plaintiff has reached maximum medical improvement or whether he retains any permanent partial impairment rating to his back due to his injury.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On February 16, 2003, Plaintiff sustained a back injury due to a specific traumatic incident, arising out of and in the course of his employment with Defendant-Employer while lifting a small spool of yarn. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's injury of February 16, 2003, either caused Plaintiff's discs herniations and nerve impingements or aggravated a pre-existing condition and is compensable under the North Carolina Workers' Compensation Act. See Smith v. Champion Int'l, 134 N.C. App. 180, 182,517 S.E. 2d 164, 166 (1999).
3. "The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury." Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Here, Plaintiff has produced medical evidence in the form of Dr. Koinis's testimony and Dr. Leibelt's medical notes that he is physically, as a consequence of the work related injury, incapable of work in any employment.
4. As a result of his compensable injury, Plaintiff was incapable of earning wages in any employment from February 19, 2003, and continuing until further order of the Industrial Commission, and is entitled to temporary total disability compensation during said period. N.C. Gen. Stat. § 97-29.
5. Plaintiff's average weekly wage of $438.72 per week yields a compensation rate of $292.63 per week. N.C. Gen. Stat. § 97-2(5).
6. Defendant is obligated to pay for all of Plaintiff's reasonably required medical treatment resulting from his back injury of February 16, 2003, for so long as such treatment is necessary to effect a cure, provide relief and/or lessen his period of disability. N.C. Gen. Stat. §§97-2(19); 97-25.
7. The issue of whether Plaintiff has sustained any permanent partial impairment to his back is left open for subsequent determination as the evidence fails to establish whether Plaintiff has reached maximum medical improvement. N.C. Gen. Stat. § 97-31.
8. Defendant has paid the entire mediation fee of $600.00 and is entitled to a credit in the amount of $300.00 for Plaintiff's portion of the mediation expenses.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay Plaintiff temporary total disability compensation at the weekly rate of $292.63 per week from February 19, 2003, and continuing until further order of the Industrial Commission. Compensation that has accrued shall be paid to Plaintiff in one lump sum.
2. Defendant shall pay the medical expenses incurred or to be incurred by Plaintiff for reasonably necessary treatment of his back injury of February 16, 2003, including, but not limited to, the assessment of Dr. Thomas Koinis, when bills for the same are submitted and approved according to procedures approved by the Commission.
3. Twenty-five percent of the compensation awarded Plaintiff in paragraph 1 of this AWARD is approved as a fee for Plaintiff's attorney and shall be deducted and paid directly to Plaintiff's attorney as follows: (1) twenty-five percent of attorney fees that have accrued shall be paid in one lump sum; and (2) thereafter, every fourth check from the compensation due Plaintiff shall be deducted and paid directly to Plaintiff's attorney.
4. Defendant is entitled to a credit in the amount of $300.00 for Plaintiff's portion of the mediation expenses.
5. Defendant shall pay the costs.
This the __ day of October 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER